```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GWENITH DUMAS,

                            Plaintiff,
                                                                    **MEMORANDUM and ORDER**
            — against —
                                                                    04-CV-4625 (SLT)
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
-----------------------------------------------------------X
```
**TOWNES, United States District Judge:**

Plaintiff, Gwenith Dumas ("plaintiff" or "Dumas"), seeks review of the final decision of the Commissioner of Social Security (the "Commissioner"), holding that plaintiff is not eligible for Social Security Income ("SSI") benefits because plaintiff is not disabled within the meaning of the Social Security Act, as amended, 42 U.S.C. § 423(d). The Commissioner has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted.

*BACKGROUND*

On October 14, 1999, plaintiff applied for disability insurance benefits, claiming that she became disabled on April 23, 1999, because she suffers from polymyositis and asthma.[1] Administrative Transcript ("Tr."), pp. 68-91.[2] On January 27, 2000, her application was denied,

---

[1] According to *Stedman's Medical Dictionary*, polymyositis is the "[i]inflammation of a number of voluntary muscles simultaneously." *Stedman's*, at 1422 (27th ed. 2000). The Myositis Association describes polymyositis as "[m]uscle weakness [that] usually happens over days, weeks or months. The weakness begins with muscles closest to and within the trunk of the body. Neck, hip, back and shoulder muscles are examples. Some patients also have weakness in muscles farther from the trunk, like hands and fingers. Some PM patients experience muscle pain, breathing problems, and trouble swallowing." Types of Myositis, available at *http://www.myositis.org/about_myositis/polymyositis.cfm* (Last visited August 22, 2008).

[2] The administrative transcript refers to pages of the administrative record filed by the Commissioner pursuant to 42 U.S.C. § 405(g)

and, after reconsideration, it was denied again on July 24, 2000. *Id.*, pp. 50, 55-56. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"), and on March 6, 2002, a hearing was held where plaintiff and her attorney were present. *Id.*, pp. 60-61, 312-72. On April 24, 2003, the ALJ issued a decision, finding that plaintiff was not disabled within the meaning of the Social Security Act because, despite suffering from severe impairments, she had the residual functional capacity to perform a wide range of sedentary work in environmentally clean atmosphere.[3] *Id.*, pp. 18-29. Plaintiff, through her attorney, appealed the ALJ's decision to the Appeals Council, which denied plaintiff's request for review on August 20, 2004. *Id.*, pp. 14, 5-7. Plaintiff then timely commenced this action.

On August 29, 2005, the Commissioner moved for judgment on the pleadings pursuant to Fed.R.Civ. P. 12(c). After granting plaintiff's requests for several extensions of time to file a response, the Court issued an Order, dated December 28, 2006, which directed plaintiff to file it within sixty (60) days. She has failed to make any submissions opposing the Commissioner's motion, and, accordingly, it is deemed fully briefed and ripe for determination.

*DISCUSSION*

**A.    *Standard of Review***

---

[3]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

Judicial review of SSI benefit determinations is governed by 42 U.S.C. § 1383(c)(3). The statute expressly incorporates the standards established by 42 U.S.C. § 405(g), which provides, in relevant part, that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" Thus, if the Commissioner's decision is supported by "substantial evidence" and there are no other legal or procedural deficiencies, then the decision must be affirmed. *See Butts v. Barnhart,* 388 F.3d 377, 384 (2d Cir. 2004) ("In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."). The United States Supreme Court has defined "substantial evidence" to connote "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (same). "In determining whether substantial evidence supports a finding of the Secretary, the court must not look at the supporting evidence in isolation, but must view it in light of other evidence in the record that might detract from such a finding, including any contradictory evidence and evidence from which conflicting inferences may be drawn." *Rivera v. Sullivan*, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991); *see also Veino*, 312 F.3d at 586 ("The district court's review of the Commissioner's decision regarding [the existence of a] disability is limited to a determination of whether the decision is supported by 'substantial evidence' in the record as a whole.").

The "substantial evidence" test applies only to the Commissioner's factual determinations; similar deference is not accorded to the Commissioner's legal conclusions or to the agency's compliance with applicable procedures mandated by statute or regulation. *See*

*Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) ("This deferential ["substantial evidence"] standard of review is inapplicable, however, to the [Commissioner's] conclusions of law.") Accordingly, the Commissioner's legal conclusions and compliance with applicable regulatory and statutory mandates are reviewed *de novo*.

B.  *Disability Determinations*

To qualify for disability insurance, a claimant must be deemed "disabled" under the Social Security Act,[4] which defines a person as disabled, "and thereby eligible for such benefits, 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  In determining whether a claimant is disabled under the Act, the Commissioner applies a five-step evaluation process.  20 C.F.R. § 404.1520; *see also Barnhart v. Thomas,* 540 U.S. 20, 25 n.2 (2003) (noting that the five-step process remains in force despite the controlling regulation being amended effective September 25, 2003).  The process provides that:  (1) if the claimant is gainfully employed then she will be found "not disabled"; (2) if the claimant suffers from a "severe" impairment, *i.e.*, one that significantly limits her physical or mental ability to do basic work activities, then the analysis proceeds to the third step; (3) if the claimant's "severe" impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and has lasted or is expected to last for a continuous period of at least twelve months, then the

---

[4]In addition to being disabled under the Social Security Act, a claimant must also meet the other requirements of 42 U.S.C. 423, such as having an insured status.  However, the only material issue here pertains to whether plaintiff is disabled.

4

claimant is disabled, if not, the analysis proceeds to the fourth step; (4) if after determining the claimant's residual functional capacity, the claimant can perform past relevant work, she will not be found disabled; and (5) if the claimant cannot perform any work she has done in the past, and the Commissioner determines that in conjunction with her residual functional capacity, age, education, and past work experience, she cannot engage in other substantial gainful work reasonably available in the national economy, she is disabled. *See* 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proving her disabled status for the purposes of steps one through four. *See* 42 U.S.C. § 423(d)(5)(A). However, "[a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)); *see also Curry v. Apfel,* 209 F.3d 117, 123 (2d Cir. 2000) ("Once a disability claimant proves that his severe impairment prevents him from performing his past work, the [Commissioner] then has the burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy.").

## C.     *The ALJ's Decision is Supported by Substantial Evidence*

The ALJ found that plaintiff was born on January 14, 1966, and was 33 years old at the time of the alleged onset date of April 23, 1999. Tr., p. 19. Plaintiff was 37 years old at the time of the hearing. The ALJ further found that plaintiff had been educated to the tenth grade and did not obtain a GED. *Id.*, p. 20. Prior to sustaining her alleged disability, she worked for various employers as a data entry clerk, a customer service representative, and a file clerk. *Id.*, pp. 19-21. At the hearing, plaintiff testified that she suffers from asthma and experiences pain in her

muscles and joints, all of which completely prevent her from being able to bend or kneel and limit her ability to walk to nearly one-half block, to stand to 10 minutes at a time, and to sit to nearly 45 minutes at one time. *Id.*, p. 21.

In applying the requisite five-step process, the ALJ found that (1) plaintiff had "not engaged in substantial gainful activity since her alleged onset date [of disability]," Tr., p. 19, (2) she "has the following medically determinable impairments: polymyositis, chronic obstructive pulmonary disease, and a dysthymic disorder," which "are 'severe' within the meaning of the Regulations," *id.*, p. 20, but (3) her impairments did not meet or equal the criteria for any impairment or combination of impairments considered *per se* disabling under the Commissioner's Listing of Impairments (the "Listings"). *Id.* At step four, the ALJ found that, despite her impairments, plaintiff retained the physical and mental residual functional capacity to perform "a significant range of sedentary work" and "meet the basic mental demands of work other than skilled or significantly detailed work." *Id.*, p. 27. Applying this measure of plaintiff's abilities, the ALJ found that (4) she was able to perform her "past relevant work as a data entry clerk," and (5) she could further perform certain jobs identified by the Vocational Expert, which took into account her subjective complaints, which exist in significant numbers in the national and local economy." *Id.*, p. 28-29. Based upon this reasoning, the ALJ concluded that plaintiff was not disabled.

Plaintiff has failed to respond the Commissioner's motion, but the record reveals that she argued before the Appeals Council that the ALJ failed to consider whether plaintiff's impairments constituted a *per se* disability under Listing 14.00, which specifically addresses polymyositis. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 1400B4, 14.05. Although the

6

ALJ concluded that none of plaintiff's impairments, individually or in combination, are "severe enough to meet the criteria of a listed impairment," the ALJ explicitly states that she gave particular consideration to three specific provisions that do not include Listing 14.00, which pertains specifically to polymyositis. Tr., p. 20. In particular, the ALJ states that she considered Listing 1.00 (musculoskeletal impairments), 3.00 (respiratory impairments), and 12.00 (mental impairments). Other than the broad finding that plaintiff does not suffer from a *per se* disability, there is no indication that the ALJ specifically considered whether plaintiff's polymyositis constituted a *per se* disability under Listing 14.00.

However, the record reveals that there is substantial evidence to support the ALJ's implicit finding that plaintiff does not have a *per se* disability under Listing 14.00. The version of Listing 14.05 that was effective at the time of the ALJ's decision provides that the conditions which must be documented pursuant to Listing 14.00B4 include the following:

> A. Severe proximal limb-girdle (shoulder and/or pelvic) muscle weakness, as described in 14.00B4; or
>
> B. Less severe limb-girdle muscle weakness than in 14.05A, associated with cervical muscle weakness and one of the following to at least a moderate level of severity:
>
>> 1. Impaired swallowing with dysphagia and episodes of aspiration due to cricopharyngeal weakness, or
>>
>> 2. Impaired respiration due to intercostal and diaphragmatic muscle weakness, or
>
> C. If associated with malignant tumor, as described under the criteria in 13.00ff, or
>
> D. If associated with generalized connective tissue disease, described under the criteria in 14.02, 14.03, 14.04, or 14.06.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 14.05 (2005). Plaintiff's medical records do not reveal that plaintiff suffered from any of the above-identified disabilities. There is no evidence regarding weakness, let alone severe weakness, associated with her pelvic or hip girdle. The medical records pertain almost exclusively to weakness related to her biceps, shoulders, and certain muscles in her legs. Moreover, it is clear that subsections C and D do not apply to plaintiff's impairments.

In addition, the ALJ's findings regarding plaintiff's residual functional capacity and the type of work she could perform given these limitations are supported by substantial evidence. First, the ALJ found that, based upon her medical records, plaintiff was capable of performing at least sedentary work. Tr. 27-28. Two of plaintiff's treating physicians, Drs. Furie and Blank, concluded that she could lift at least 10 pounds, had an unlimited ability to sit for eight hours a day, and could stand or walk at least two hours a day. Tr. 193, 255-56. Plaintiff was further examined by five other medical consultants whose opinions substantially mirrored the opinions of Drs. Furie and Blank or indicated that plaintiff was capable of performing more exertional work. Tr. 197-200, 203, 220, 269, 271, 278.

The ALJ did not give great weight to the opinions of plaintiff's treating physicians, Drs. Stein and Guttman, because their opinions indicated that plaintiff's abilities were much more limited and restricted than the opinions of other medical consultants and inconsistent with bulk of plaintiff's medical records. Tr., pp. 23-25. The "treating physician" rule provides that "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we

8

will give it controlling weight." 20 C.F.R. § 404.1527(d)(2); *see also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). However, "the opinions of a treating physician . . . need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Veino*, 312 F.3d at 588 (citations omitted). "Genuine conflicts in the medical evidence are for the Commissioner to resolve." *Id.* Here, it is noteworthy that the opinions of Drs. Stein and Guttman are largely inconsistent with a substantial portion of plaintiff's medical records and the opinions of every other examining medical consultant. In fact, Dr. Stein's opinion that plaintiff was incapable of working because of muscle weakness in her extremities, *see* Tr., p. 239, is inconsistent with his own previous finding that her muscle weakness was not a significant impairment. *See* Tr., p. 264. Similarly, Dr. Guttman's opinion that plaintiff was totally disabled in the use of her left upper extremity, *see* Tr., p. 232, is inconsistent with his previous finding that she had normal sensory and reflex examinations with respect to her upper extremities. *See* Tr., p. 261. As a result, the ALJ did not err in refusing to give great weight to these opinions.

Finally, the ALJ's finding that, although plaintiff was not able to perform her past relevant work as a data clerk because of her asthma and alleged mental impairments, she was capable of performing other jobs in the national and local economy that accommodated these additional impairments is supported by sufficient evidence. In finding that plaintiff was capable of working despite all of her alleged impairments, the ALJ relied upon the testimony of Andrew Pasternak, a vocational expert who identified three jobs that were low stress and repetitive, could be performed at the sedentary level, and required limited education and no decision-making: electronics assembler, jewelry assembler, and telephone quotation clerk. Tr. 364-67. The ALJ reasonably relied upon Mr. Pasternak's testimony, and her decision is supported by substantial

evidence.  Accordingly, the ALJ's finding that plaintiff is not disabled under the Act is supported by substantial evidence, and plaintiff's appeal must be denied.

## *CONCLUSION*

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's appeal is denied.  The Clerk of Court is directed to enter judgment in favor of the Commissioner and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       September 4, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge